UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY ANN REEVES,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CIVIL ACTION NO. 3:21-CV-00745<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

On March 3, 2015, Plaintiff Kimberly Ann Reeves ("Reeves") first sought review of the decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits under Title II of the Social Security Act. *Reeves v. Commission of Social Security,* No. 3:15-CV-00444 (M.D. Pa. March 3, 2015), ECF No. 1 ("*Reeves 1*"). On December 21, 2016, Reeves sought review of the Commissioner's decision for the second time. *Reeves v. Commission of Social Security,* No. 3:16-CV-02510 (M.D. Pa. December 21, 2016), ECF No. 1 ("*Reeves 2*"). Reeves filed the current complaint on April 23, 2021, seeking review of the Commissioner's decision for the third time under Section 205(g) of the Social Security Act, 42 U.S.C. §405(g). (Doc. 1). The parties agree that the ALJ erred in assessing the effects of her migraine headache-related limitations, therefore the Court will only assess whether remand or reversal with an award of benefits is appropriate. (Doc. 20, at 3; Doc. 21, at 1). For the following reasons, the undersigned shall order the Commissioner's decision be **REVERSED** and Reeves be **AWARDED BENEFITS**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

This action began with an application filed by Reeves on April 29, 2014, for Disability Insurance Benefits under Title II of the Social Security Act. (Doc. 13-2, at 12). Since that date, Reeves's claim has bounced between this Court and the Social Security Administration several times. (Doc. 13-8, at 18; Doc. 13-15, at 12). This is now the third time Reeves seeks review in this Court.

On April 29, 2014, Reeves protectively filed a Title II application for benefits alleging a disability onset date of September 28, 2012. (Doc. 13-2, at 12). The Social Security Administration initially denied the application on June 19, 2014, prompting Reeve's request for a hearing, which Administrative Law Judge Michele Wolfe ("ALJ Wolfe") held on September 23, 2014. (Doc. 13-2, at 12). In a written decision dated October 14, 2014, ALJ Wolfe determined that Reeves is not disabled and therefore not entitled to benefits under Title II. (Doc. 13-2, at 29). Specifically, ALJ Wolfe stated that Reeves had the residual functional capacity ("RFC") to perform light work with modifications and that jobs existed in significant numbers in the national economy that she could perform. (Doc. 13-2, at 16-17, 27). On January 7, 2015, the Appeals Council subsequently denied Reeves's request for review. (Doc. 13-2, at 2).

Reeves filed a complaint in this Court on March 3, 2015. *Reeves 1,* No. 3:15-CV-00444, ECF No. 1. The parties filed their respective briefs and the Court ordered the matter remanded to the Commissioner for further consideration of Reeves's application for benefits. *Reeves 1,* No. 3:15-CV-00444, ECF Nos. 14; 15; 16; 18. Specifically, the Court held that ALJ Wolfe's "consideration of [Reeves's] migraine headache impairment is cause for remand" and

directed ALJ Wolfe to "more thoroughly articulate her consideration of [Reeves's] migraine headaches and the effects the symptoms may have on her ability to work." *Reeves 1,* No. 3:15-CV-00444, ECF No. 17, at 29-31. Judgment was entered in favor of Reeves and against the Commissioner on July 30, 2015. *Reeves 1,* No. 3:15-CV-00444, ECF No. 18, at 2.

On remand, Reeves again appeared and testified before ALJ Wolfe, this time on March 21, 2016. (Doc. 13-8, at 18). In a written decision dated May 31, 2016, the ALJ denied Reeves's claim. (Doc. 13-8, at 51). ALJ Wolfe determined that Reeves had the RFC to perform sedentary work with exceptions and that she could not return to any of her past relevant positions, but that she was capable of performing other jobs in the national economy. (Doc. 13-8, at 24, 46, 47). On October 31, 2016, the Appeals Council reviewed Reeves's challenges to the ALJ's decision and declined to exercise jurisdiction over Reeves's claims, thus affirming the ALJ's May 31, 2016 decision. (Doc. 13-8, at 2).

On December 21, 2016, Reeves initiated her second action in this Court. *Reeves 2,* No. 3:16-CV-02510, ECF No. 1. On August 10, 2017, the Court determined that ALJ Wolfe had again failed to adequately consider the effects of Reeves's chronic migraine headaches in her RFC determination, remanded the matter to the Commissioner for further consideration, and entered judgment in favor of Reeves. *Reeves 2*, No. 3:16-CV-02510, ECF Nos. 19, at 36; 20, at 1; 21, at 1.

On September 25, 2018, Reeves appeared before ALJ Timothy Wing ("ALJ Wing"). (Doc. 13-15, at 12). In a written opinion dated March 12, 2020, ALJ Wing ruled that Reeves was capable of light work with limitations, that she was unable to return to past relevant work, but could perform other jobs in the national economy. (Doc. 13-15, at 35-38). On February

24, 2021, the Appeals Council declined to review Reeves's case and the instant action was filed on April 23, 2021. (Doc. 1; Doc. 13-15, at 2). The Commissioner responded on August 16, 2021, providing the requisite transcripts from Reeves's disability proceedings. (Doc. 12; Doc. 13). On November 8, 2021, the Commissioner filed a motion to remand (the "motion") seeking reversal of the final decision and remand of the case for further administrative proceedings. (Doc. 19; Doc. 20, at 1). The parties agree that the ALJ erred in this case, however, Reeves contests the motion on the grounds that the correct remedy for the ALJ's error would be reversal with an award of benefits as opposed to remand. (Doc. 20, at 3; Doc. 21, at 1).

**II.     STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B. JUDICIAL REVIEW

The Court's review of a determination denying an application for benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

    C.    AWARD OF BENEFITS

The statute which defines the Court's role in reviewing Social Security disability determinations states, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405 (g). The Court has the power to simply award benefits. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). That power has been limited by the Third Circuit Court of Appeals as follows:

> The decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. When faced with such cases, it is unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits.

*Podedworny*, 745 F.2d at 221-22 (internal citations omitted).

As stated by the Third Circuit, two restrictions preclude the district court from awarding benefits: The administrative record must be fully developed, and substantial evidence on the record as a whole must indicate that the claimant is disabled and entitled to benefits.

*Podedworny*, 745 F.2d at 221. Additionally, cases which have been ongoing for a considerable amount of time are more likely to result in an award of benefits rather than further proceedings and consideration. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019). The court in *Diaz* surveyed Third Circuit precedent to determine the point at which courts will award benefits and found that "administrative delays of five years or more in cases involving one or two prior remands have constituted excessive delays triggering consideration of an award of benefits in lieu of a remand." *Diaz*, 388 F. Supp. 3d at 391.

In addition to the delay, benefits may only be awarded if the administrative record is fully developed, and substantial evidence on the record as a whole indicates Pearson is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221. This means that any of a number of requirements will lead to the award of benefits: "If the court finds the record to be 'extensive and well developed;'" "if the court concludes that the medical opinion evidence in a case has been fully developed;" if the "extensive medical record, wrongly rejected by the ALJ, is substantial evidence that [a claimant is disabled];" "or when treatment records, coupled with a treating source's opinions over several years, indicates that the plaintiff is unable to maintain a normal, regular work schedule." *Diaz*, 388 F. Supp. 3d at 391-92 (internal citations omitted).

### III. DISCUSSION

The parties agree that the ALJ erred in determining that Reeves was not entitled to benefits, as he failed to adequately consider the effects and limitations of her migraine headaches. The question before the Court is whether the matter should be remanded for further review or whether reversal with an award of benefits is appropriate. The

Commissioner seeks an order reversing her final decision and remanding the case for further review. (Doc. 20, at 1). Specifically, the Commissioner states that the ALJ shall further consider Reeves's migraines and RFC, complete the administrative record, and issue a new decision. (Doc. 20, at 7). Further, the Commissioner contends that remand is the appropriate course of action as "the ALJ, and not the Court, should further develop the record" and that "[t]he record does not establish [Reeves's] entitlement to benefits." (Doc. 20, at 4-5, 7). Reeves contends that reversal with an award of benefits is appropriate as the record is well developed and Reeves has experienced a significant delay in her receipt of benefits to which she is entitled. (Doc. 18, at 21-22).

> A. REEVES SHALL BE AWARDED BENEFITS.

This matter has been brought before an ALJ on three different occasions and has been dismissed and remanded by this Court twice on the merits. (Doc. 13-2, at 12; Doc. 13-8, at 18; Doc. 13-15, at 12); *Reeves 1,* No. 3:15-CV-00444, ECF No. 18, at 2; *Reeves 2*, No. 3:16-CV-02510, ECF No. 20, at 1. In *Reeves 1*, the Court found that the ALJ did not provide a reason for discounting the limiting effects of her migraines and directed the ALJ to articulate her consideration of Reeves's migraine headaches more thoroughly and the effects the symptoms may have on her ability to work. No. 3:15-CV-00444, ECF No. 17, at 30-31. In *Reeves 2*, the Court found that the ALJ failed to adequately consider the medical evidence and Reeves's consistent testimony regarding her migraines. No. 3:16-CV-02510, ECF No. 19, at 32-36. The Court further noted the limitations Reeves experiences due to her migraines and the ALJ's lack of discussion of contrary medical evidence undermining Reeves's symptoms. *Reeves 2*, No. 3:16-CV-02510, ECF No. 19, at 32-36. Presently, the Commissioner seeks remand due

to the ALJ's similar failures to adequately consider Reeves's migraines in determining her RFC. (Doc. 20, at 3). Reeves opposes remand and argues that reversal with an award of benefits is more appropriate. (Doc. 21,at 7). At this point, the Court must consider whether remand is once again suitable, or whether benefits should be awarded.

First, administrative delay, in this case, favors an award of benefits in lieu of a remand. "[A]dministrative delays of five years or more in cases involving one or two prior remands have constituted excessive delays triggering consideration of an award of benefits in lieu of a remand." *Diaz*, 388 F. Supp. 3d at 391. Here, Reeves first filed for administrative benefits on April 29, 2014, and filed her first complaint in this Court on March 3, 2015. (Doc. 13-3, at 15); *Reeves 1,* No. 3:15-CV-00444, ECF No. 1. More than eight years have passed since Reeves's application, and more than seven years have passed since her first complaint. Additionally, this would be the Court's third remand of Reeves's case. *See Reeves 1,* No. 3:15-CV-00444, ECF No. 18, at 2; *Reeves 2*, No. 3:16-CV-02510, ECF No. 20, at 1. Every remand has been due to the Commissioner's failure to adequately consider the effects of Reeves's migraines in determining her RFC; the claimant has not been the cause of any delay. *See Reeves 1,* No. 3:15-CV-00444, ECF No. 17, at 29-31; *Reeves 2*, No. 3:16-CV-02510, ECF No. 19, at 36. The administrative delay, in this case, favors an award of benefits in lieu of a remand. *See Diaz*, 388 F. Supp. 3d at 391.

Additionally, it is important to note "the procedural posture of a case, and particularly which party bears the burden of proof and production on issues of disability." *Diaz*, 388 F. Supp. 3d at 392. During steps one through four of the sequential analysis, the claimant bears the burden of proof. *See Mason*, 994 F.2d at 1064; *Diaz*, 388 F. Supp. 3d at 392. At step five,

the burden shifts to the Commissioner to demonstrate that jobs exist in significant numbers in the national economy that the claimant could perform. *See Mason*, 994 F.2d at 1064; *Diaz*, 388 F. Supp. 3d at 392. Here, the ALJ concluded that "[t]hrough the date last insured, [Reeves] was unable to perform any past relevant work." (Doc. 13-15, at 35). Thus, the burden shifted to the Commissioner to demonstrate that Reeves could have performed jobs that existed in significant numbers in the national economy. In assessing whether remand is appropriate, the "burden must be carried by the Commissioner." *See Diaz*, 388 F. Supp. 3d at 397.

To determine whether benefits should be awarded, the Court must examine Reeves's medical record to assess whether it is fully developed and indicates Reeves is disabled and entitled to benefits. *See Podedworny,* 745 F.2d at 221. The Court finds that the record has been fully developed. The record spans over 4,000 pages and includes hearing testimony, medical examinations, and medical opinions from a variety of sources. (Doc. 13-1; Doc. 13-2; Doc. 13-3; Doc. 13-4; Doc. 13-5; Doc. 13-6; Doc. 13-7; Doc. 13-8; Doc. 13-9; Doc. 13-10; Doc. 13-11; Doc. 13-12; Doc. 13-13; Doc. 13-14; Doc. 13-15; Doc. 13-16; Doc. 13-17; Doc. 13-18; Doc. 13-19; Doc. 13-20; Doc. 13-21). Reeves's date last insured is December 31, 2019. (Doc. 13-15, at 14). It is unlikely that any additional evidence exists to demonstrate Reeves's eligibility for benefits.[2] Given the complete administrative record, the Court turns to whether the record reflects that Reeves is entitled to benefits. *See Podedworny,* 745 F.2d at 221.

---

[2] Reeves contends that "the record is, in essence, closed; no additional evidence is even claimed by [Reeves] to exist that would shed light on her condition proper to [December 31, 2019], and SSA does not suggest that additional evidence is necessary." (Doc. 21, at 6-7).

Here, substantial evidence supports a finding that Reeves is disabled and entitled to benefits. First, the Court looks to Reeves's subjective opinion and reports of daily activities. Next, the Court examines the medical evidence including Reeves's treatment, reports, and the medical opinions that have been provided. Finally, the Court examines testimony from multiple Vocational Experts. Taken together, the evidence in the record demonstrates Reeves's inability to perform sustained employment.

In a function report completed by Reeves, she indicates that she has migraines that last from hours to a few days and that due to her pain, medications, and migraines there are some days when she cannot get out of bed. (Doc. 13-6, at 59). She notes that she needs help doing household chores as she gets dizzy and falls down and that she prefers to have someone with her when she goes out to "make [her] feel more secure." (Doc. 13-6, at 61-62). She states that she still maintains some hobbies but it takes her longer and she "do[es] a lot less of everything." (Doc. 13-6, at 63-64). Reeves states that she "do[es not] have a social life." (Doc. 13-6, at 63-64). Her husband notes in a third-party function report that Reeves will do light cleaning on good days but that "over 90% of the time she is laying down or in the recliner with a heating pad or sleeping because of pain" and that household chores take her a long time. (Doc. 13-6, at 76-78). Reeves's husband also states that she has migraines and that she stays in bed during her bad headaches. (Doc. 13-6, at 79).

During her first hearing, Reeves testified that she had migraines two days a week which lasted from four hours to 24 hours depending on how well her medication worked and how severe the migraine was. (Doc. 13-2, at 78-79). At her second hearing, Reeves testified that her migraines were worse and that she changed medication because she was getting them

four days a week. (Doc. 13-8, at 66). She stated that she will have a migraine anywhere from two to four days a week and that her medication does not always help. (Doc. 13-8, at 743. She will usually lay down in a dark room, however, she has been to the emergency room to receive an IV because her at-home medication did not work. (Doc. 13-8, at 73). Bright light, noise, and some smells can trigger her migraines and she has missed doctors' appointments due to her migraines in the past. (Doc. 13-8, at 73-74). In her third hearing, Reeves testified that she now gets twelve migraines a month while taking her medication. (Doc. 13-15, at 290). She stated that she had an appointment with a neurologist because her migraines have increased. (Doc. 13-15, at 291). Reeves testified that she has visited the emergency room for three hours to get an infusion due to the severity of her migraines, which provided her relief, and that she is having memory issues and falling down. (Doc. 13-15, at 291). She stated that her most significant increase in migraines occurred in June 2018, but when she switched medications her migraines were occurring ten to twelve times a month instead of almost every day. (Doc. 13-15, at 292). Her migraines range from two hours to a couple of days. (Doc. 13-15, at 292).

In November 2009, Reeves reported that she was experiencing daily headaches that were interfering with her vision along with dizziness and blacking out and she was prescribed medication. (Doc. 13-7, at 334). In December 2009, her headaches continued daily, however, she reported that they were not as intense and did not last as long as before. (Doc. 13-7, at 296, 330, 333). In January 2010 and March 2010 Reeves noted improvement in her headaches since receiving more medication. (Doc. 13-7, at 197, 276). In June 2010, Reeves sought follow-up treatment for her headaches stating that she gets them two to three times a week for

two to six hours, an aura when her eyes are closed, weakness of the right side with pain, and short-term memory loss but she had felt improvement with her new medication. (Doc. 13-13, at 437). In December 2013, Reeves was experiencing migraines two to three times a week, with some vision changes, and good relief with her medication. (Doc. 13-7, at 35, 41). Further, treatment notes from 2015 indicate that Reeves has a problem with migraines with an aura, classical migraine headaches, and a history of migraine headaches. (Doc. 13-13, at 895-96, 898, 905).

Reeves continued to seek treatment for her migraines and used different medications in an attempt to curb her symptoms. (Doc. 13-14, at 341, 375, 377, 396; Doc. 13-20, at 342, 354, 368, 370, 377, 392, 453, 788, 797, 859, 947). Documents from the emergency department at Jersey Shore Hospital indicate that she was seen for a migraine on May 24, 2015. (Doc. 13-20, at 33-37). On October 5, 2018, Reeves underwent an MRI due to her migraines because she was "not responding to current treatments." (Doc. 13-20, at 765). April 11, 2019, treatment notes indicate that Reeves experiences migraines with nausea, phonophobia, and photosensitivity that last up to two days without treatment. (Doc. 13-20, at 948). Further, it is indicated that Reeves sought treatment from a neurologist and that since changing her medications her migraines have been less intense and less frequent. (Doc. 13-20, at 948). A note from September 11, 2019, indicates that Reeves's migraines were responding to therapy. (Doc. 13-21, at 6-7). In 2020, treatment notes indicate that Reeves experiences 10 to 12 migraines a month and "frequent migraines." (Doc. 13-15, at 116, 126, 184).

The Court looks to the opinion evidence from Reeves's treating physician, Dr. Mehta. (Doc. 13-20, at 1010). For claims filed before March 27, 2017, substantial weight is given to

the treating physician's medical opinion. 20 C.F.R. § 404.1527(c)(2); *See Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (explaining that the treating physician's opinion that claimant was "seriously limited" inability to perform work-related tasks was entitled to great weight and could only be rejected based on contradictory medical evidence); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) ("Dr. Corcino's opinion that Cotter could not return to work is entitled to substantial weight because he is Cotter's treating physician."). Dr. Mehta reported treating Reeves since 2014 and that she has been diagnosed with migraine headaches since 2006. (Doc. 13-20, at 101, 623, 696). Dr. Mehta opined that Reeves would likely be off task for more than 25% of a typical workday due to her symptoms, is able to maintain attention and concentration for less than two hours, would need to miss more than four days of work per month, can sit for two hours in an eight-hour work day, can stand or walk for two hours in an eight-hour workday, requires the option to sit and stand at-will, and would need to lie down or recline every two hours for 30 minutes in an eight-hour work day. (Doc. 13-20, at 101-02). Further, Dr. Mehta noted that Reeves can lift and carry up to 10 pounds occasionally 20 pounds rarely, and never more than 50 pounds. (Doc. 13-20, at 102).

In a transcript of a telerecorded message during a psychological evaluation on January 7, 2013, Dr. Kelsey noted Reeves's frequent migraine headaches that occur three times per week with the use of Imitrex shots. (Doc. 13-7, at 2-3). In a report dictated on January 19, 2013, Dr. Jones, a state agency expert, noted that Reeves has a history of migraines and that her migraines may be due to a concussion that she experienced while serving in the military while stationed in Iraq. (Doc. 13-7, at 10-11). Dr. Jones also noted Reeves's diagnosis of possible pseudotumor cerebri. (Doc. 13-7, at 11). Dr. Jones reported that Reeves experiences

two migraines per week, that they vary in severity, that they usually occur in the frontal region of her head, that she experiences nausea and vomiting, has passed out, cannot tolerate light, and that she has been taking Imitrex for her symptoms. (Doc. 13-7, at 11-12).

Dr. Hardaway provided an internal medicine examination on June 16, 2014, noting one of Reeves's chief complaints was migraine headaches occurring at least two times per week with no visual field defects and pain in the frontal region. (Doc. 13-7, at 64). Dr. Hardaway diagnosed Reeves with migraine headaches and also noted Reeves's use of Imitrex for headaches. (Doc. 13-7, at 65, 68).

In an internal medicine examination report from Dr. Magurno, it was noted that Reeves has migraines that began in 2004 and that she experiences three to four a week that last from 4 to 24 hours. (Doc. 13-14, at 252). For treatment, Dr. Magurno noted that Reeves takes "medication and lies in bed all day with everything shut off." (Doc. 13-14, at 252). Further, Dr. Magurno reported that Reeves has been to the emergency room twice in the last six months due to her migraines. (Doc. 13-14, at 252). Dr. Magurno stated that Reeves was experiencing a migraine during the examination and was photophobic. (Doc. 13-14, at 256). Dr. Magurno diagnosed Reeves with migraines. (Doc. 13-14, at 256).

The ALJ requested the opinion of Dr. Melamed who completed the requisite forms on November 29, 2018. (Doc. 13-20, at 825, 831). Dr. Melamed opined that Reeves could lift and carry up to 10 pounds continuously, 11 to 20 pounds frequently, 21-50 pounds occasionally, and could never lift and carry over 50 pounds. (Doc. 13-20, at 826). Dr. Melamed also noted that Reeves could stand and walk for one hour at a time without interruption and sit for four hours at a time without interruption. (Doc. 13-20, at 827).

Further, Dr. Melamed found that Reeves could walk for two hours, stand for three hours, and sit for eight hours in an eight-hour work day. (Doc. 13-20, at 827). Dr. Melamed stated that none of Reeves's impairments affect her hearing or vision but that she experiences frequent severe migraines that would affect her work activities. (Doc. 13-20, at 831).

      Dr. Owens testified at the hearing held on January 22, 2020, and completed due to a computer system failure on February 4, 2020. (Doc. 13-15, at 12). At the hearing, Dr. Owens testified that Reeves has experienced chronic migraine-type headaches since about 2004, which have been improved with medication, but still occur about weekly and include some visual problems. (Doc. 13-15, at 224). Dr. Owens noted the symptoms of migraines include severe headaches varying in duration with nausea, vomiting, and avoidance of lights and noise and described the varying effects of medication to curb migraine symptoms. (Doc. 13-15, at 231). Further, Dr. Owens explained that the average duration of a migraine is six hours and that on occasion patients will visit the emergency room when the migraine does subside. (Doc. 13-15, at 232). Dr. Owens did not include accommodations for Reeves's migraines in his limitations. (Doc. 13-15, at 228-29).

      At the first hearing, the Vocational Expert (the "First VE") opined that an individual who would be off task for more than 20 percent of the work day and would not be able to complete their work would not be able to maintain employment. (Doc. 13-2, at 94, 101). Further, if an individual consistently missed two days per month then that individual would be unable to maintain competitive employment. (Doc. 13-2, at 101-02). At the second hearing, the Vocational Expert (the "Second VE") testified that a person who is absent for four or more days a month would not be able to sustain work. (Doc. 13-8, at 94). The Second VE stated

that "an individual [who] is consistently missing two days a month outside of allocated time . . . would . . . create a problem with competitive employment." (Doc. 13-8, at 94). Additionally, an individual who would be off task more than 20 percent of the day and unable to complete the job would not be able to sustain competitive employment. (Doc. 13-8, at 87). Finally, the Second VE noted that someone whose work schedule is disrupted due to migraine headaches 50 to 60 percent of the time would not be able to sustain work. (Doc. 13-8, at 94). At the third hearing, the Vocational Expert (the "Third VE") stated that being off task for approximately 13.5 percent of the work day on a consistent basis would be problematic and that there would not be work for a person who is off task more than 20 percent of the month. (Doc. 13-15, at 260, 311). The Third VE also opined that if an individual is absent two days in a month on a consistent basis such absences would not allow the individual to maintain competitive employment. (Doc. 13-15, at 260-61).

The nature of Reeves's migraines rendered her condition disabling through the period at issue. See *Kulbacki v. Colvin,* No. CV 2:15-297, 2016 WL 2609984, at *6 (W.D. Pa. May 6, 2016) (quoting *Thomas v. Colvin*, No. 1:14-cv-00274-TFM, 2015 WL 4067147, at *5-7 (W.D. Pa. July 2, 2015)) (When determining the credibility of a claimant's migraine Courts look to: "[diagnoses; treatment and medication]; the length of the history of complaints and treatment relating to migraines; the alleged severity and frequency; the symptoms the claimant alleges the migraines cause; and whether the record contains any statements from doctors questioning the alleged frequency or severity.").

The opinion of Dr. Mehta, Reeves's treating source since 2014, indicated that Reeves would likely be off task for more than 25% of a typical workday due to her symptoms and

would need to miss more than four days of work per month. (Doc. 13-20, at 101). Additionally, the medical opinions of Dr. Kelsey, Dr. Jones, Dr. Hardaway, Dr. Magurno, and Dr. Owens indicated that Reeves experiences frequent migraine headaches occurring multiple times per month. (Doc. 13-7, at 2-3, 11-12, 64, 224, 252). Additionally, Dr. Melamed indicated that Reeves's "frequent [and] severe migraines . . . would affect her work activities." (Doc. 13-20, at 831). Throughout the time in question, Reeves was prescribed various medications and currently takes Imitrex for her migraine symptoms. (Doc. 13-6, at 22; Doc. 13-20, at 462). Although Imitrex has aided in the symptoms she experiences from her migraines, the medication does not provide enough relief to allow her to maintain gainful employment as she is still likely to miss more than four work days per month and be off task for more than 25% of a typical workday. "[I]f an employee required more than two days' absence from work in an average month, [she] could not be expected to sustain competitive employment." *Abbruzzese v. Astrue*, No. CIV.A. 10-705, 2010 WL 5140615, at *9 (W.D. Pa. Dec. 9, 2010). Reeves experiences debilitating migraine headaches while taking her medication at least once a week. No medical professional contradicted Reeves's assertions that she experienced frequent and severe migraines at least once a week while taking her medication.

The evidence, the testimony, and the Vocational Experts' opinion that the inhibition Reeves experiences due to her migraines indicate that she would not be able to maintain a normal and regular work schedule. *See Abbruzzese*, 2010 WL 5140615, at *9 (ALJ was directed to pose a hypothetical question to the vocational expert in consideration of claimant's migraines because the claimant experienced "debilitating migraine headaches two or three

times a week [with] no medical evidence to contradict this testimony"); *see also Brown v. Astrue*, No. 07-1132, 2008 WL 700064, at *16 (D.N.J. Mar. 12, 2008) (court directed ALJ to examine whether a claimant's recorded migraines were disabling "in light of the VE's opinion that an individual suffering from biweekly migraines lasting approximately two days in each episode could not sustain gainful employment"). Benefits should be awarded. *See Diaz*, 388 F. Supp. 3d at 391-92.

## IV. CONCLUSION

The decision made by the Court today is one that should be made on only rare and extraordinary occasions. To award or not to award disability benefits is a choice that presumptively lies with the Commissioner. However, "finality and fairness are cardinal virtues of our legal system," and at this point, after waiting several years and experiencing multiple faulty decisions, Reeves is entitled to the application of those virtues. *See Diaz*, 388 F. Supp. 3d at 399.

Based on the foregoing, the Commissioner's motion to remand is **DENIED**. (Doc. 19). The Commissioner's decision is **REVERSED** and Reeves shall be **AWARDED BENEFITS**. Judgment shall be entered in favor of Reeves and against the Commissioner.

An appropriate Order follows.

Dated: August 26, 2022
*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**